## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Marty H. Segelbaum, Inc., d/b/a MHS      **Court File No. 0:08-CV-06416 PAM/AJB**
Licensing, a Minnesota corporation,

         Plaintiff,

    vs.

M W Capital, LLC, a Delaware limited-
liability company, f/k/a PTI Sports, LLC;
Pacific Cycle, Inc., a Delaware
corporation,

         Defendants.

---

## DEFENDANT PACIFIC CYCLE INC.'S MEMORANDM OF LAW IN SUPPORT OF ITS MOTION PURSUANT TO FED. R. CIV. P. 12(B)(6) TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Pacific Cycle Inc. ("Pacific") submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint of Plaintiff Marty H. Segelbaum, d/b/a MHS Licensing, ("MHS") pursuant to Fed. R. Civ. P. 12(b)(6). As shown in more detail below, Pacific does not belong in this suit. Pacific is not a signatory to the commission agreement ("Agreement") that MHS signed with defendant M. W. Capital LLC (formerly PTI Sports LLC and referred to herein as "PTI") and that forms the basis for this suit, nor did Pacific assume PTI's liability under the Agreement when it purchased certain of PTI's assets last year. Indeed, MHS admits that the Agreement was expressly *not* assumed. The Complaint fails to state a claim against Pacific upon which relief may be granted, and therefore should be dismissed.

**<u>The Facts As Alleged By Plaintiff</u>**

In its Complaint, plaintiff MHS alleges the following facts:  defendant PTI sells bicycle helmets and other accessories.  (Complaint ("Compl.") at ¶ 2).  In 2005, PTI contracted with plaintiff MHS to help PTI obtain licenses allowing it to use certain intellectual property (*e.g.*, the name and likeness of various cartoon characters, such as "Dora the Explorer") in connection with PTI's products.  (Compl. at ¶¶ 1-2, 9 and Exhibit ("Ex.") 1 thereto).  In exchange, PTI agreed to pay MHS a certain percentage of product net sales (referred to in the Complaint as "Commissions").  (*Id*. at ¶¶ 10, 12, Ex. 1 at p. 2).  This Agreement was extended through December 31, 2008.  (*Id*. at ¶¶ 10-11 and Ex. 2-4 thereto).

Movant Pacific is not alleged to have been – and was not – a signatory to the Agreement.  (*Id*. at ¶¶ 9-11 and Ex. 1-5 thereto).  Pacific came on the scene in early 2008, when PTI informed MHS that PTI wanted to sell certain of its assets to Pacific.  (*Id*. at ¶¶ 14-15).  Because the assets to be purchased included a number of intellectual property licenses, one of the "conditions" of the asset purchase was that PTI obtain from the owners/licensors of that intellectual property their consent to the assignment of PTI's license rights in that property to Pacific.  (*Id*. at ¶ 14).

MHS alleges that PTI requested and induced MHS to help it secure those consents so that the licenses could be sold and assigned to Pacific.  (*Id*. at ¶ 15).  But MHS does not allege that Pacific asked for PTI's help, or that Pacific requested or instructed MHS to perform any services with respect to helping PTI obtain those consents.  And although the Complaint alleges that MHS "requested written assurance ***from PTI*** that either PTI

would continue to pay the Commissions or that Pacific or its parent company, Dorel Industries, Inc. would assume the obligation" (*id*. at ¶ 16), there is no allegation that such assurance was sought – or received – from Pacific.  Nor is there any allegation that anyone at PTI was authorized to provide – or purported to provide – such assurance on Pacific's behalf.

The most that MHS can muster are allegations that MHS "communicated that it expected its Commissions would continue to be paid" (although the Complaint does not specify to which entity or person this "expectation" was communicated), and that MHS was somehow "lead [*sic*] to believe that both PTI and Pacific were aware of MHS' claim for Commissions, that MHS' claim for Commissions would be addressed as part of the sale of PTI's business assets to Pacific and that it was in MHS' best interest to cooperate with the sale of PTI's business assets . . . ." (*Id*. at ¶¶ 15-16).  MHS does not allege how it was "led to believe" the foregoing, *e.g.,* whether it was through a suggestion, a statement, or some other conduct.  Most important, however, MHS does not attribute this "leading" to Pacific, and ***the Complaint stops short of asserting that MHS "was led to believe" – by Pacific or anyone else – that Pacific would assume PTI's liabilities to MHS.***

MHS further alleges that it and PTI were successful in obtaining the licensor consents necessary to free up the licenses for assignment.  (*Id*. at ¶¶ 15, 19).  On June 26, 2008, PTI and Pacific completed the asset sale.  (*Id*. at ¶ 18).  And as MHS admits in its Complaint, the parties to the asset sale *did* address the MHS/PTI contract:  the asset sale contract was included in the MHS liabilities that were not transferred to Pacific.  (*Id*.

at ¶ 21).   Liability for that contract was expressly left with PTI—as MHS admits, the MHS contract with PTI was "intentionally and specifically" not assumed by Pacific.  (*Id*. at ¶ 36).

PTI has failed to honor its obligations under the MHS contract and has failed to make any satisfactory payment to MHS in settlement of its liability to MHS.  (*Id*. at ¶ 30).  According to the Complaint, in late 2008, PTI denied any further liability to MHS and told MHS that the sale of the transferred assets ended its obligation under the Agreement.  (*Id*. at ¶ 22).  MHS does not allege that Pacific instructed or in any way caused PTI to repudiate – and to refuse MHS any compensation for – PTI's obligations under the Agreement.

MHS now has sued PTI for declaratory relief (Count I),  breach of contract (Count II), interference with contract (Count III), and unjust enrichment (Count IV).  MHS also attempts to rope Pacific into the suit (Counts I, III, IV but not Count II) by alleging an unspecified "civil conspiracy" (Count V).   The Complaint fails to state a cause of action against Pacific, however, and Pacific should be dismissed from this suit.

## ARGUMENT

### I.    THE APPLICABLE LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) requires this Court to dismiss claims where they fail to state a factual or legal basis on which relief may be granted.  On a 12(b)(6) motion to dismiss, the Court must decide whether the facts alleged by a plaintiff, if true, would entitle the plaintiff to a legal remedy.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  Accordingly, a court ruling on a Rule 12(b)(6) motion must accept all

allegations in the complaint as true, as well as draw reasonable inferences in the light most favorable to the plaintiff. *Schaaf v. Residential Funding Co.,* 517 F.3d 544, 549 (8th Cir. 2008); *Neighborhood Enters., Inc. v. City of St. Louis,* 540 F.3d 882, 884-85 (8th Cir. 2008). But the court is not required to ignore facts in the complaint that undermine a plaintiff's claim. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).

Sufficiently stating a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).   Conclusory allegations are insufficient to withstand a Rule 12(b)(6) motion; rather, plaintiffs must state factual allegations sufficient "to raise a right to relief above a speculative level." *Id.* at 1965; *accord Schaaf,* 517 F.3d at 549.

Here, none of MHS' claims against Pacific state a claim for relief.  MHS' very vague and conclusory allegations rarely even mention Pacific, the purported claims lack any factual support as to Pacific, and the Complaint falls far short of asserting the necessary elements of a cognizable claim against Pacific.

## II.    MHS' COMPLAINT FAILS TO STATE A CLAIM AGAINST PACIFIC.

### A.    Plaintiff's Declaratory Judgment Claim (Count I) Must Be Dismissed Because It Does Not State a Viable Underlying Cause of Action Against Pacific.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that there must be an "actual controversy" before relief can be granted.  In this regard, the United States Supreme Court long ago held that, to support a claim under the Declaratory Judgment

Act, the facts must show a substantial controversy that is real and immediate between parties having adverse legal interests. *See Maryland Cas. Co. v. Pacific Coal & Oil* Co., 312 U.S. 270, 273 (1941). *Accord Gopher Oil Co. v. Bunker,* 84 F.3d 1047, 1050 (8th Cir. 1996).[1]  And, "[a] successful action for declaratory judgment requires a viable underlying cause of action."  *Essling's Homes Plus, Inc. v. City of St. Paul*, 356 F. Supp. 2d 971, 984 (D. Minn. 2004).

Here, MHS seeks three declarations: (1) that it fully performed under the Agreement and it thus entitled to Commissions; (2) that the obligation to pay Commissions was not terminated by the sale of PTI's assets to Pacific; and (3) that *both* PTI and Pacific are liable to pay Commissions under the Agreement.  (Compl. at ¶ 26).  Thus, as alleged, the only declaration that MHS seeks with respect to Pacific is that Pacific is somehow obligated to satisfy PTI's liability under its contract with MHS.

It is clear on the face of the Complaint that MHS does not have a viable underlying cause of action against Pacific under the Agreement alone.  MHS concedes, as it must, that Pacific is not a party to the Agreement. (*Id*. at ¶¶ 9-11 and Ex. 1-5 attached thereto).  MHS also admits that the Agreement was not among the items transferred in the asset sale, and indeed that Pacific "specifically did not assume [that] Agreement."  (*Id*. at ¶¶ 21, 36).  MHS' own allegations establish that Pacific is not a party to the Agreement

---

[1]  The Agreement between MHS and PTI (*see* Compl. at Ex. 1 thereto), which is at the heart of this dispute, has a Minnesota choice of law provision.  Pacific, who is not a party to the Agreement, is located in Wisconsin and whatever conduct it is alleged to have undertaken would have occurred in Wisconsin.  (*Id*. at ¶ 3).  However, because there appears to be no substantive difference between Minnesota and Wisconsin law

and that Pacific did not assume PTI's liability under the Agreement.  Tellingly, the only breach of contract claim in the Complaint (Count II) is pled against PTI, not Pacific.  (*See id*. ¶¶ 27-31).  Thus, MHS' own complaint belies any argument that there is an actual controversy between MHS and Pacific under the Agreement by, in essence, admitting that the Agreement does not apply to Pacific.   Consequently, Count I must be dismissed as to Pacific in so far as it seeks a declaration that Pacific is liable under the Agreement.

> **B.    Plaintiff's "Interference with Contract" Claim (Count III) Must Be Dismissed Because It Does Not Allege that Pacific "Intentionally Procured" PTI's Breach or Committed a Wrongful Act.**

Presumably, MHS is claiming tortious interference of contract, although it does not explicitly frame its count as such.   Nevertheless, to state a claim for tortious interference with contractual relations under Minnesota law, a plaintiff must establish: (1) the existence of a contract, (2) that defendant knew about the contract, (3) that defendant "intentionally procured" a breach of the contract without justification, and (4) that plaintiff suffered injuries as a result of the breach.  *Karnewie-Tuah v. Frazier*, 757 N.W.2d 714, 719 (Minn. Ct. App. 2008); *Whyte v. Am. Bd. of Physical Med. & Rehab*., 393 F. Supp 2d. 880, 891 (D. Minn. 2005) (citing *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 633 (Minn. 1982)).

MHS does not allege that Pacific caused PTI not to honor – or to not pay MHS compensation for – PTI's liability under the Agreement.  Instead, the Complaint merely alleges that liability for the Agreement was not assumed by Pacific in the asset purchase

for the claims alleged, it does not appear necessary to engage in a choice of law analysis for the purposes of this Motion.

transaction and therefore remained with PTI.  PTI could have taken part of its proceeds from the asset sale and paid them to MHS to fulfill its obligations, or it could have continued to pay MHS over time, or it could have made some other deal with MHS – the possibilities are too numerous to list – to settle PTI's outstanding liability.  When and how PTI chose to fulfill its obligations to MHS was not Pacific's business or its concern.  As with most purchaser's of assets, it excluded particular liabilities in order to avoid such involvement.  Making good on its liability to MHS was PTI's responsibility, and that responsibility was explicitly left with PTI in the asset deal.  PTI apparently has not made satisfactory payment to MHS, but there is no allegation that Pacific caused PTI's failure in this regard.

Moreover, an action for tortious interference cannot lie where the alleged interferer has a legitimate economic interest in undertaking the alleged action with regard to the contract at issue and employed no improper means—i.e., means that "are independently **wrongful** such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade or any other wrongful act recognized by statute or common law."  *Harman v. Heartland Food Co., et al.,* 614 N.W.2d 236, 241 (Minn. Ct. App. 2000) (citation omitted, emphasis added).  In this instance, MHS alleges that Pacific "intentionally" did not assume PTI's liability under the Agreement. (Compl. at ¶ 36). This is neither a wrongful act nor tortuous interference.  There was no legal requirement that Pacific agree to undertake PTI's liability to MHS.  Indeed, Pacific clearly had a right – and the economic interest – to decline to take on that liability and to leave it with PTI, which it did.  MHS fails to allege how Pacific's non-assumption of PTI's liability under

the Agreement was in any way wrongful.[2]   As such, Count III must be also dismissed as to Pacific.

### C. Plaintiff's Equitable Claim of Unjust Enrichment (Count IV) Must Be Dismissed Because It Fails to Show How Pacific Was Unjustly Enriched, Fails to Allege that Pacific Was Not "Entitled" to the Licenses, and There is An Adequate Remedy At Law.

To establish a claim for unjust enrichment, a plaintiff must show that the defendant knowingly received or obtained something of value to which the defendant was not entitled, and that it would be unjust for the defendant to keep that benefit. *Guinness Import Co. v. Mark VII Distribs., Inc.,* 153 F.3d 607, 613 (8th Cir. 1998) (citing *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.,* 493 N.W.2d 137, 140 (Minn. Ct. App. 1992)).

Noticeably absent from the Complaint is any allegation that Pacific was not entitled to the licenses that it acquired from PTI in the asset sale.  This failure dooms MHS' unjust enrichment claim.  At most, the Complaint alleges that Pacific contracted with PTI to purchase certain of PTI's assets and that Pacific did in fact pay PTI for them. (Compl. at ¶¶ 14, 18, 40).   The original MHS/PTI Agreement and the subsequent amendments that are attached to the Complaint (*see id.* at Ex. 1-5) do not contain any provision limiting the transferability of any licenses that MHS may obtain for PTI, nor is

---

[2]   Nor can it.  The "traditional approach to corporate successor liability," which is followed in most jurisdictions, including both Delaware (the law of which applies to the asset purchase agreement between PTI and Pacific) and Minnesota, recognizes that not all liabilities are transferred in an asset sale, and a purchaser of assets generally cannot be forced to satisfy the excluded debts and liabilities of the predecessor corporation. *Dunn v. National Beverage Corp.,* 729 N.W.2d 637, 644-45 (Minn. Ct. App. 2007); *In re Safety-Kleen Corp.,*  380 B.R. 716, 739 -740 (Bankr. D. Del. 2008).

there any allegation that the licenses were not transferable.   Indeed, the Complaint specifically alleges that the grantors of the licenses consented to their transfer to Pacific. (*Id*. at ¶ 19).

MHS appears to be alleging that Pacific is not entitled to the benefit of the assets it purchased because MHS was somehow wrongly induced to help PTI obtain the licensor consents that PTI needed in order to transfer those assets.   But there no allegation that Pacific induced or caused MHS to assist PTI in obtaining those licensor consents. Indeed, MHS alleges that defendant PTI (but not Pacific) induced it to help obtain those licensor consents.   Specifically, MHS alleges that, "[p]ursuant to ***PTI's request***, MHS contacted Licensors and provided substantial assistance in obtaining their consent to the assignment of existing licenses to Pacific."   (*Id*. at ¶ 15) (emphasis added).   MHS also asserts that PTI (not Pacific) made the (few and sketchily alleged) "assurances" that induced MHS to help PTI obtain the consents.   (*Id*. at ¶ 16).   Finally, MHS alleges that PTI (not Pacific) got paid for the assets that it sold to Pacific and then refused to make a satisfactory payment to, or other settlement with, MHS.   (*Id*. at ¶¶ 14, 18, 22, 42).   While MHS might well have a claim for "unjust enrichment" against PTI, MHS does not allege any statement or action by Pacific that would support such a claim against Pacific.

Confirming that MHS' invocation of equitable principles is more appropriate against PTI than against Pacific is the long-standing principle that an award of unjust enrichment is barred when a plaintiff has an adequate remedy at law.   *See Servicemaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305  (Minn. 1996).   Here, PTI has ample legal remedies against PTI – the party with whom MHS contracted, the party who

breached its obligations, and the party who is accused by MHS of wrongfully inducing its help in securing the transferability of the assets that PTI wanted to sell.  Plaintiff is free to pursue, and  is in fact pursuing in this case, a full array of breach-of-contract remedies from PTI.  Courts have found that the availability of an adequate legal remedy against one party (in this case, PTI) precludes an unjust enrichment claim against another (here, Pacific).  *See, e.g., Southtown Plumbing,* 493 N.W.2d at 140-41 (subcontractors could not recover under unjust enrichment theory from construction lenders because they had a statutory remedy that could have been exercised against non-party general contractors); *Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.,* 201 Fed.Appx. 988, 992 (5th Cir. 2006) (existence of a viable action at law against another party precluded unjust enrichment claim).  Thus, Count IV must also be dismissed against Pacific.

> **D.** **Plaintiff's Unspecified "Civil Conspiracy" Claim (Count V) Must Be Dismissed Because It Fails to State Factual Allegations Supporting a Conspiracy and It is Not Based on an Underlying Intentional Tort.**

It is well-settled in Minnesota that "[a] conspiracy is a combination of persons to accomplish an unlawful purpose or a lawful purpose by unlawful means."  *Harding v. Ohio Cas. Ins. Co.,* 41 N.W.2d 818, 824 (Minn. 1950).  *See also Masepohl v. Am. Tobacco Co.,* 974 F. Supp. 1245, 1255 (D. Minn. 1997) (to prove a conspiracy under Minnesota law, a plaintiff must present facts that demonstrate an agreement to accomplish an unlawful purpose as well as concerted action to achieve that purpose) and *Steele v. Mengelkoch*, No. A07-1375, 2008 WL 2966529 at *2 (Minn. Ct. App. Aug. 5, 2008) ("Civil conspiracy requires the conspirators to have a meeting of the minds as to

plan or purpose of action to achieve a certain result") (citing *Bukowski v. Juranek*, 35 N.W.2d 427, 429 (Minn. 1948)).

No such facts are alleged here.  MHS pleads no facts regarding an agreement between PTI and Pacific that Pacific would fail to make good on its obligations to MHS. There is no allegation as to who made such an agreement, when, where, or how.  Some factual allegations are necessary to state a claim for conspiracy. *See Occhino v. Lannon*, 150 F.R.D. 613, 623 (D. Minn. 1993) ("Allegations of a conspiracy, absent supporting facts, do not establish a claim upon which relief may be granted.") (citing Eighth Circuit cases).  Simply uttering the word "conspiracy" is not enough to conjure one. *See Buetow v. A.L.S. Enter., Inc.,* 564 F. Supp. 2d 1038, 1041 (D. Minn. 2008) (citing *Twombly*, 127 S. Ct. at 1965).  Count V therefore must be dismissed.

Moreover, MHS' civil conspiracy claim cannot stand under Minnesota law because it is not based on an underlying tort.   It is well-settled that an action for civil conspiracy must be based on a criminal act or an underlying ***intentional tort***. *Sennart v. Mobay Chem. Corp.*, 597 F. Supp. 502, 505 (D. Minn. 1984); *Noble Sys. Corp. v. Alorica Cent. LLC,* 543 F.3d 978, 986-87 (8th Cir. 2008).  Thus, if a litigant fails to state a claim for an underlying intentional tort, the conspiracy claim may not stand on its own and also must fail. *See, e.g., Pugh v. Westreich*, No. A04-657, 2005 WL 14922 at *4 (Minn. Ct. App. Jan. 4, 2005) (where a plaintiff's tort claims are dismissed, "the cause of action for conspiracy also fails").   And to the extent that MHS seeks to base its conspiracy allegations on its breach of contract claim against PTI, the existence of such a claim would not avail MHS here. *See SICK, Inc. v. Motion Control Corp.,* No. Civ. 01-1496

JRTFLN, 2003 WL 21448864 at *10-11 (D. Minn. Jun. 19, 2003) (dismissing civil conspiracy claim based on breach of contract theory).

As noted above, the only tort alleged against Pacific is a tortious interference with contract claim (Count III), which must fail as a matter of law because MHS does not allege that Pacific committed a wrongful act.  The few allegations made in support of MHS' conspiracy claim are that PTI and Pacific entered into an agreement to transfer certain assets from PTI to Pacific.  This is not unlawful; businesses sell assets every day.  MHS also alleges that PTI and Pacific agreed that the sold assets would include intellectual property licenses to be assigned by PTI to Pacific.  This is also a lawful, and common, occurrence.  Finally, MHS alleges that PTI and Pacific agreed not to include the PTI/MHS commission agreement in the list of transferred assets and liabilities—and that the Agreement therefore would not be assumed by Pacific.  This is also a lawful, and common, occurrence.  *See* 6A FLETCHER CYCLOPEDIA OF THE LAW OF CORP., §2953 (West 2005) (In the asset purchase context, "[t]he purchasing corporation ordinarily is not liable for the general debts or on the general contracts of the selling corporation....").

In an attempt to morph a customary and lawful asset sale into an unlawful conspiracy, MHS apparently relies on its assertions that MHS did not get compensated by PTI as required under its commission contract with PTI, and that it was somehow duped into helping PTI obtain licensor consents to assignment, for which it was also left uncompensated.  But as the Complaint alleges and admits, it was PTI that requested and induced MHS to help it obtain the licensor consents; it was PTI that failed and refused to compensate MHS for those efforts; and it was PTI that failed and refused to pay under (or

reach a settlement with MHS for) the Agreement that had explicitly been left as PTI's responsibility.

Apparently recognizing the insufficiency of its conspiracy count, MHS throws in a passing and conclusory reference to "deceit," stating: "In furtherance of their conspiracy, Defendants acted purposefully to deceive Plaintiff into cooperating and to deprive Plaintiff of its right to Commissions under the terms of the Agreement."   (Compl. at ¶ 48).  This bald and conclusory reference to "deceit" cannot create a conspiracy claim. Although the Complaint does not say so, it appears that the referenced "deceit" is that MHS was induced to help PTI get the licensor consents and, as discussed above, there is no allegation that Pacific made any statements, representations or assurances to MHS regarding those consents.  Nor does MHS allege that Pacific instructed, suggested, or in any way caused PTI to enlist MHS' help in the effort to obtain the consents.  And in any event, as discussed above, even if Pacific had sent PTI a signed and certified letter demanding that PTI use MHS to secure whatever licensor consents might be necessary (which is not alleged to have done, and did not do), there is no allegation that Pacific did anything to cause – or even know about – MHS' failure to make a satisfactory payment to MHS out of PTI's proceeds from the asset sale or otherwise make good on its obligations to MHS.[3]

---

[3]   Further, it is axiomatic that allegations of "deceit" (i.e., fraud) must be pled with specificity and particularity.  *Kranz v. Koenig*, 484 F. Supp. 2d. 997, 1002 (D. Minn. 2007) (citing Fed. R. Civ. P. 9(b)).  In this regard, a plaintiff must "specific facts such as time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *Id.* (quoting *United States ex rel.*

As Plaintiff's conspiracy allegations are fatally deficient, Count V also must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Pacific requests that this Court enter an order dismissing Plaintiff's Complaint as to Pacific. MHS' Complaint may state claims against PTI for breaching its contractual obligations to MHS, and for somehow wrongfully inducing (but failing to compensate MHS for) its help in securing the licensor consents that PTI needed in order to sell its assets to Pacific. But MHS' attempt to stretch its claims to reach Pacific is overreaching. As there is no conduct alleged as to Pacific that would support a cause of action, MHS has failed to state a claim against Pacific, and Pacific therefore should be dismissed from this suit as a matter of law.

---

*Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)). Here, MHS' conclusory allegations of "deceit" fall far short of this standard, omitting vital details such as precisely who at PTI or Pacific was involved in the deception, as well as when and how the alleged deception occurred.

Dated: January 28, 2009                    Respectfully submitted,

                                           **SCHIFF HARDIN LLP**

                                           By _____/s/ Linda K. Stevens_____
                                                   Linda K. Stevens, *pro hac vice*

                                           6600 Sears Tower
                                           233 South Wacker Drive
                                           Chicago, Illinois  60605-6473
                                           Telephone:  312.258.5500
                                           Email:  lstevens@schiffhardin.com

                                           Mark S. Olson (#82120)
                                           David A. Prange (#329976)
                                           OPPENHEIMER WOLFF & DONNELLY LLP
                                           Plaza VII, Suite 3300
                                           45 South Seventh Street
                                           Minneapolis, Minnesota  55402-1609
                                           Telephone:  612.607.7000
                                           Facsimile:  612.607.7100
                                           Email:  molson@oppenheimer.com
                                                   dprange@oppenheimer.com

                                           **ATTORNEYS FOR DEFENDANT**
                                           **PACIFIC CYCLE INC.**