UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
08-CV-6416(JMR/AJB)

| Marty H. Segelbaum, Inc., | ) | |
| d/b/a MHS Licensing, | ) | |
| a Minnesota corporation | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MW Capital, LLC, a Delaware | ) | |
| limited-liability company, | ) | |
| f/k/a PTI Sports, LLC; and | ) | |
| Pacific Cycle, Inc., a | ) | |
| Delaware corporation | ) | |

    Plaintiff, Marty H. Segelbaum, Inc., d/b/a MHS Licensing, brokers licensed characters and designs, offering them to product manufacturers. Plaintiff provided this service to defendant MW Capital, LLC ("Capital"), which placed the licensed images on its products. Capital subsequently sold its assets to Pacific Cycle, Inc. ("Pacific"). Plaintiff claims it remains entitled to payment of commissions. Defendants disagree.

    Plaintiff filed suit against both defendants claiming unjust enrichment and civil conspiracy, and seeking declaratory relief. Plaintiff accuses Capital of breach of contract, and Pacific of contract interference. Defendants invoke Rule 12 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P") and move to dismiss, denying plaintiff has stated a claim. Defendants' motions are granted in part and denied in part.

I. <u>Background</u>

On May 1, 2005, plaintiff entered into a License Agreement ("Agreement") with Capital, under which it would secure trademark licenses for Capital's bicycle parts, helmets, and accessories. Plaintiff fulfilled its obligations under the Agreement and secured various character licenses for Capital, including Dora the Explorer, Scooby Doo, Shrek, and Thomas the Tank Engine.

Capital agreed to pay plaintiff a $2,000 monthly retainer and a 2% commission on each sale during "the life of each Licensed Product." (Agreement ¶ 4(b).) Each commission payment was to be accompanied by an itemized statement setting forth "the actual number of all Licensed Products sold, and the Net Sales thereof, during the preceding three (3) month period." (Agreement ¶ 6.) The parties further agreed that, upon written request, plaintiff had the right to inspect "records pertaining to sales of Licensed Products." (Agreement ¶ 7.) The parties consented to be bound by Minnesota law, and extended the Agreement through December 31, 2008.

On April 7, 2008, Capital announced the sale of its assets to Pacific. Plaintiff claims it was asked by Capital to contact license owners "to facilitate assignment of the existing licenses to Pacific," because "[a]ssignment of the existing licenses was a condition of the sale . . . ." (Compl. ¶ 14.) Plaintiff alleges

it provided substantial assistance to Capital in doing so. (Compl. ¶ 15.)

On two separate occasions, plaintiff sought written assurance from Capital that it would continue to receive commission fees after the sale. Plaintiff claims it was "lead [sic] to believe" that "[its] claim for Commissions would be addressed as part of the sale." (Compl. ¶ 16.) Shortly before the sale closed, Pacific requested a proposal from plaintiff as to the payment of commissions. (Compl. ¶ 17.)

On June 26, 2008, Pacific purchased Capital's assets for $28.1 million. Thereafter, it paid plaintiff commissions for the first and second quarters of 2008. (Compl. ¶ 23.) On November 3, 2008, however, Pacific informed plaintiff it would no longer pay the commissions, because the Agreement between plaintiff and Capital was not part of the asset purchase. Plaintiff then contacted Capital, which "denied any further liability for Commissions," and indicated "the sale of its assets ended its obligation to pay commissions." (Compl. ¶ 22.)

Plaintiff filed suit against defendants in federal court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff accuses Capital of breach of contract, unjust enrichment, and civil conspiracy, and accuses Pacific of interference with its Agreement, unjust enrichment, and civil conspiracy. Plaintiff seeks a declaratory judgment against both defendants, holding it is

entitled to continuing commission payments. Each defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff opposes both motions.

II. Analysis

A court considering a motion to dismiss "accept[s] the factual allegations of the complaint as true, but the allegations must supply sufficient 'facts to state a claim to relief that is plausible on its face.'" O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009) (citing Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. With this in mind, the Court separately examines plaintiff's claims of breach of contract, unjust enrichment, civil conspiracy, interference with contract, and request for declaratory relief.

    A. Breach of Contract

Plaintiff claims it fulfilled all of its contractual obligations under the Agreement. It seeks damages from Capital for breach of contract in failing to pay commissions after the asset sale. See MSK EyES Ltd. v. Wells Fargo Bank, 546 F.3d 533, 540 (8th Cir. 2008) (setting forth elements for breach of contract

claim). Capital replies that, under the Agreement, it was to pay commissions "for the life of each Licensed Product." (Agreement ¶ 4(b).) It contends the life of the licensed products ended with its asset sale to Pacific, as did its obligations under the Agreement. The Court disagrees.

Minnesota courts "have consistently stated that when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 364-65 (Minn. 2009). Here, there is nothing in the Agreement's plain language limiting the "life of each Licensed Product" to products sold only by Capital.

Capital asks the Court to find that, "for the life of each Licensed Product" means "for so long" as products with the brokered trademarks continue to be possessed and sold by Capital. (Capital Mem. Supp. Mot. Dismiss 7.) It offers Rasmusson v. Sten Corp., for the proposition that the "life of the product" ends when a company sells its assets. No. A06-2058, 2007 Minn. App. Unpub. LEXIS 1208 (Minn. Ct. App. Dec. 18, 2007). In Minnesota, only the Supreme Court issues opinions which are binding law.[1] Even so, Capital has stretched the tissue of this unpublished opinion until it no longer holds water.

---

[1] See Haugen v. Total Petroleum, Inc., 791 F. Supp. 788, 790 (D. Minn. 1992)(Doty, J.) aff'd, 971 F.2d 124, 125 (8th Cir. 1992); Sefkow v. Sefkow, 427 N.W.2d 203, 210 (Minn. 1988).

In Rasmusson, plaintiff's licensing agreement with defendant gave defendant the exclusive right to use plaintiff's "know-how" to make medical products in exchange for a sales commission during "the life of the products." Id. at *5. That agreement's terms specifically stated, "[Sten] shall pay [plaintiff] royalties in the amount of Four Percent . . . for the life of the products." Id. Fourteen years later, Sten sold its assets to Aspen Surgical Products, Inc. Id. at *3. When Aspen refused to pay plaintiff's commissions, Rasmusson sued Sten and Aspen alleging breach of contract and unjust enrichment. Examining the contract "in context," the Minnesota Court of Appeals limited the phrase "for the life of the products" to products sold by Sten. The decision relied on contract language stating Sten shall pay royalties for "all products sold by [Sten]." Id. at *7. The court concluded, "regardless of how [it] construe[d] 'life of the products,' [plaintiff] generally is entitled to royalties for products sold only by Sten." Id. Here, the Agreement has no such limitation, thus distinguishing this case from Rasmusson.

Capital claims other parts of the Agreement confirm "payment of commissions was contingent on sales" by Capital. (Capital Mem. Supp. Mot. Dismiss 9.) Capital points to Paragraph 6 of the Agreement requiring each commission be "accompanied by an itemized statement setting forth the actual number of all Licensed Products sold, and the Net Sales thereof," and to Paragraph 7, affording

6

plaintiff the "right to inspect records pertaining to sales of Licensed Products." Capital essentially claims contractual impossibility, since it no longer sells the covered products. From this, it concludes the Agreement is void. The Court is not convinced.

The cited clauses are not similar to those highlighted by the Rasmusson court; they never specifically designate or refer to Capital as the sole seller of licensed products. To the contrary, the Agreement states the "[c]onsultant [plaintiff] shall be entitled to a Commission for License Products sold under licenses arising out of Consultant's efforts during the term of this Agreement . . . ." This plain language suggests plaintiff should receive commissions for all sales stemming from its efforts, regardless as to which company makes the sale.[2]

Capital's motion to dismiss plaintiff's breach of contract claim is denied.

B. Unjust Enrichment

Plaintiff accuses both defendants of unjust enrichment, claiming they have obtained something of value to which they were not entitled, and it would be unjust to allow them to retain those

---

[2] Finally, Capital argues any claim for breach of an oral contract is barred by the statute of frauds. (Capital Mem. Sup. Mot. to Dismiss 10.) This claim is remarkable, as plaintiff does not seem to have asserted a breach of an oral contract, nor does its memorandum refer to one. Absent such a claim, the Court declines to consider its possible invalidity by reason of the statute of frauds. This issue is simply not before the Court.

benefits. Guinness Imp. Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998).[3] Plaintiff argues the price Pacific paid to purchase Capital reflects Pacific's valuation of Capital's assets, including the character licenses. In failing to pay plaintiff, Capital received value for the character licenses without paying commissions. In the alternative, plaintiff suggests Pacific purchased Capital's assets at a discount if the Agreement's value was excluded from the asset sale, and now uses this asset without paying for it. Plaintiff argues discovery is necessary to determine which of its unjust enrichment theories may be sustained.

The Court finds plaintiff has stated sufficient facts to establish an unjust enrichment claim plausible on its face.

1. Capital

As a general rule, "[t]he existence of an express contract between the parties precludes recovery under the theories of quasi-contract, unjust enrichment, or meruit." Sterling Capital Advisors v. Herzog, 575 N.W. 2d 121, 126 (Minn. Ct. App. 1998.) Where claims of unjust enrichment are not based on the contract, however,

---

[3] Plaintiff does not dispute that, ultimately, the unjust enrichment claim against Capital may fail if the Agreement governs their relationship. Where plaintiff alleges unjust enrichment "as an alternative theory," the Court may consider both the contract and unjust enrichment claims at this phase in the litigation. See, e.g.,TCS Holdings, Inc., v. Onvoy, Inc., No. 07-1200, 2007 U.S. Dist. LEXIS 56275, at *14 (D. Minn. Aug. 1, 2007)(permitting plaintiff to pursue both a breach of contract claim and an alternative unjust enrichment claim at the motion to dismiss phase of the litigation).

a party may recover under an implied contract claim. Ventura v. Titan Sports, Inc., 65 F.3d 725, 730 (8th Cir. 1995).

For example, in Saql v. Hirt, the parties' contract covered plaintiff's installation of electrical ducts, but plaintiff performed additional work at defendant's request. 52 N.W.2d 721, 723-25 (Minn. 1952). The Court granted judgment for plaintiff under an unjust enrichment theory holding "[a] person performing services not within the terms of the written agreement under which he is operating is entitled to recover the reasonable value thereof under an implied or quasi contract therefor." Id.

Here, the Agreement is silent concerning the possibility of an asset sale. Plaintiff, however, maintains a subsequent agreement led it to believe its interests and "claim for commissions would be addressed as part of the sale." (Compl. ¶ 16.) In reliance thereon, plaintiff "provided substantial assistance in obtaining [licensors'] consent to the assignment of the existing licenses to Pacific." (Compl. ¶ 15.) Plaintiff alleges it performed additional work at defendant's request and to its advantage. The Court considers this conduct unjust enrichment.

   2. Pacific

Pacific asks the Court to dismiss plaintiff's unjust enrichment claim, stating it received nothing to which it was not entitled, it was not unjustly enriched, and an adequate remedy at

law bars any unjust enrichment claim against it.  At this stage in the litigation, the Court cannot agree.[4]

Plaintiff's complaint alleges facts which, if true, indicate Pacific may well have received benefits to which it was not entitled, and it would be unjust for Pacific to keep them.  See Cady v. Bush, 166 N.W.2d 358, 361 (Minn. 1969) (explaining the unjust enrichment action's essence "is that the defendant has received money which in equity and good conscience should have been paid to the plaintiff").  As stated above, plaintiff alleges the asset-purchase price was reduced because the Agreement was not part of the sale.  Plaintiff supports this claim noting Pacific's request for a proposal from plaintiff regarding commission payments before closing the sale.  (Compl. ¶ 17.)

In addition, plaintiff points to Pacific's payment of commissions in accordance with the Agreement for the first and second quarters of 2008.  In similar contract disputes, Minnesota courts have held that permitting a party to "assume, and to act on the assumption, that the contract was valid," can prevent a party from later disclaiming the contract.  See Chisholm Water Supply Co. v. Chisholm, 285 N.W. 895, 897 (Minn. 1939).  Plaintiff's complaint

---

[4] In addition, Pacific argues plaintiff did not adequately plead its alternative unjust enrichment theories in the complaint. The Court disagrees.  Where plaintiff's complaint alleges "[i]t would be unjust for Defendant Pacific to retain the full value and benefits of the license procured by Plaintiff for [Capital] under the Agreement without paying Plaintiff the Commissions," plaintiff adequately provided Pacific with notice of this claim.

notes "[t]he last payment received by [it] under the Agreement, which included Commissions due for the First and Second Quarters of 2008, was paid by Pacific." (Compl. ¶ 23.) Plaintiff may well be able to convince a jury that these payments demonstrate Pacific's true belief that it owed commissions under the Agreement. While Pacific protests it "expressly agreed to [the Agreement's] exclusion" from the asset purchase, a jury could well find its behavior indicates otherwise. (Pacific Reply 6.)

Plaintiff claims Pacific received a benefit for which it did not pay in using the licenses, but refused to pay the commissions. Plaintiff's specific allegations suggest a right to relief which is far from speculative. Finally, Pacific's argument that an unjust enrichment claim is barred because plaintiff has an adequate remedy at law is unavailing. As already discussed, at this stage in the litigation, plaintiff is permitted to pursue alternative theories that would provide remedies at law and equity.

C. Civil Conspiracy

To demonstrate a civil conspiracy, plaintiff must state Pacific and Capital agreed to accomplish an unlawful purpose, and took concerted actions to achieve that purpose. Harding v. Ohio Cas. Ins. Co., 41 N.W.2d 818, 824 (Minn. 1950). In addition, defendants' actions must be based on an underlying intentional tort. Senart v. Mobay Chem. Corp., 597 F. Supp. 502, 505 (D. Minn. 1984). The Supreme Court recently emphasized a plaintiff cannot

11

merely incant the words "conspiracy" or "agreement" in order to adequately plead conspiracy. See Twombly, 550 U.S. at 555.

Plaintiff's factual allegations do not suggest defendants worked together to accomplish an unlawful purpose. See Occhino v. Lannon, 150 F.R.D. 613, 623 (D. Minn. 1993) ("Allegations of a conspiracy, absent supporting facts, do not establish a claim upon which relief may be granted."). Plaintiff merely alleges, "upon information and belief Pacific was aware of [plaintiff's] cooperation and involvement in getting the Licensors' consent to assignment of the existing licenses." (Compl. ¶ 15.) This allegation does not begin to show how defendants' negotiations involved anything "more than what they had a legal right to do." Wurdemann v. Hjelm, 102 N.W.2d 811, 820 (Minn. 1960). Neither plaintiff's complaint nor its pleadings allege sufficient facts showing its claims are conceivable, let alone plausible.

D. Interference With Contract

Plaintiff accuses Pacific of interference with its Agreement. To succeed on such a claim, plaintiff must demonstrate the existence of a contract; of which Pacific was aware; and intentionally procured its breach; without justification; and as a result, plaintiff suffered damages. Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994). An action for interference with contract cannot be maintained where Pacific had a legitimate economic interest in the Agreement and "employ[ed] no improper means."

Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 983 (8th Cir. 2008) (citing Harman v. Heartland Food Co., 614 N.W.2d 236, 241 (Minn. Ct. App. 2000)). Minnesota courts define improper means as "independently wrongful" acts including: threats, violence, trespass, defamation, and misrepresentation of fact. Harman, 614 N.W.2d at 241. Pacific seeks dismissal of this count, arguing plaintiff does not allege Pacific employed any improper means or intentionally induced Capital's alleged breach. The Court concurs. Plaintiff has failed to allege a cognizable interference with contract claim.

Going further, a defendant may avoid interference liability "by showing that his actions were justified by a lawful object that he had a right to pursue." Langeland v. Farmers State Bank, 319 N.W.2d 26, 32 (Minn. 1982). Under Minnesota law, a purchaser of assets may decline to assume a seller's contractual commitments. See Minn. Stat. § 302A.661 subd. 4 ("The transferee is liable for the debts, obligations, and liabilities of the transferor only to the extent provided in the contract or agreement between the transferee and the transferor . . . ."). Where plaintiff's complaint merely alleges Pacific "was aware of the Agreement," it fails to allege Pacific committed any "independently wrongful" acts. Pacific had a right to exclude liabilities from its contract with Capital; plaintiff does no more than allege Pacific acted

within this right. Accordingly, the Court dismisses plaintiff's interference with contract claim.

E. Declaratory Judgment

Plaintiff asks this Court to declare it entitled to commissions for the life of the licensed products; that obligations to pay commissions did not end with the sale of assets to Pacific; and that Capital and Pacific remain liable for the commissions under the terms of the Agreement.

Capital seeks dismissal of this count, and argues "these issues are encompassed in [plaintiff's] failed claim for breach of contract." Pacific maintains that because it did not assume the Agreement, there is no actual controversy on this count. The Court disagrees. Plaintiff's declaratory judgment claim is maintained.

1. Capital

Claiming plaintiff's request for declaratory relief overlaps its breach of contract claim, Capital seeks dismissal to avoid "wast[ing] judicial resources." (Capital Mem. Supp. Mot. Dismiss 13.) While the Court appreciates Capital's solicitous concern for the well-being and time-conservation of our Nation's judicial officers, plaintiff's request appears neither duplicative nor wasteful.

Under the Declaratory Judgment Act, this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201(a). District courts are afforded broad discretion over these claims. Alsager v. Dist. Court of Polk County, 518 F.2d 1160, 1163 (8th Cir. 1975) (federal courts have discretion "to make a declaration of rights," but no "duty to do so"); see also Nat'l Hockey League v. Nat'l Hockey League Players Ass'n, 789 F. Supp. 288, 294 (D. Minn. 1992). In exercising this discretion, the Court notes "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

While plaintiff's claim for a declaratory judgment encompasses its breach of contract claim, the declaratory judgment's scope is broader; were the Court to issue one, it might well delineate all three parties' rights and obligations, as well as resolve plaintiff's breach of contract claim. This goes well beyond any pure contract remedy. The declaratory judgment claim stands.

### 2. Pacific

Pacific denies there is any "actual controversy" between the parties susceptible to resolution by declaration because it was not party to the Agreement. Pacific's analysis is too narrow. Plaintiff asks the Court to declare "the obligation to pay commissions to [p]laintiff was not terminated by sale of [Capital's] assets to Pacific." Plaintiff's unjust enrichment claim against Pacific alleges similar claims. Accordingly, the

15

Court finds an "actual controversy" exists between the parties on this count.

III. Conclusion

Accepting plaintiff's version of facts as true, plaintiff performed work under the Agreement; defendants benefitted from that work; and now neither defendant will pay plaintiff. While plaintiff's claims of civil conspiracy and interference with contract fail, plaintiff has properly pleaded claims for breach of contract and unjust enrichment. Accordingly, IT IS ORDERED that:

1. Capital's motion to dismiss is granted as to Count 5 (Civil Conspiracy).

2. Pacific's motion to dismiss is granted as to Counts 3 (Interference with Contract) and 5 (Civil Conspiracy).

3. Defendants' further motions to dismiss are denied.

Dated:   December 11, 2009

                                               s/James M. Rosenbaum
                                               JAMES M. ROSENBAUM
                                               United States District Judge